May it please the court, your honors, did the Board of Immigration Appeals accept or reject the female petitioner's theory in her motion to remand as to Mohammed versus Gonzalez being a change in the applicable law of the United States pursuant to HCFR 1208.4A4 and HCFR 1003.2C4, which allows that kind of motion for remand while a appeal is still pending before the Board of Immigration Appeals? Well, we'll never know, because the Board of Immigration Appeals completely ignored that issue, invented their own issue of ineffective assistance of counsel, which was not raised by the petitioners, and then ruled that because the female petitioner had not made a motion to reopen based on ineffective assistance of counsel that they were denying. We believe that the government often raises these issues and cites cases like Ventura to say that these are things that the Board of Immigration Appeals should adjudicate. I think cases such as Shilon v. INS and Cita v. INS would require that when evidence or a theory of law is put before the Board of Immigration Appeals that the Board of Immigration Appeals adjudicate that theory of law. I'm willing to go with you to the point of what was argued to the BIA. The BIA didn't pick up, and they picked up on something else. Where they picked it up, I don't know. And I'm willing to go along with the idea that Muhammad was a substantial change in the case law. Is change in case law change of law within the meaning of the regulation and statute that we're after that would allow her to be excused from the one-year bar? Well, the statute is silent on whether it's case law, statutory law, or regulatory law. But since we're in the United States where primary authority is case law, I would interpret it as a change in the substance of the law, whether it's cases or statute. I understand the argument. I'm actually quite sympathetic to the argument. Can we do that as a first instance, or do we need to send it back to the BIA to let them have a crack at interpreting the statutory meaning on this question? I think Ventura would require it be sent back to the Board of Immigration Appeals, Your Honor. There's another novel issue. Can we hint to them as we send it back what we think the answer should be? I believe you could, Your Honor. And as a matter of fact, I believe you should. There is another very novel issue in that, in this case. If you'll recall, the female respondent's testimony at trial was diminished because she remained in the courtroom while her co-respondent and husband was testifying. There's an issue of notice here. There was never a motion to exclude her from the courtroom by the government's attorney. There was never an instruction by the immigration judge that I'm going to diminish your testimony if you remain in this courtroom. As a matter of fact, you'll see at page 329 of the administrative record, the immigration judge went as far as to say that it was her right to remain in the courtroom. Yet at the end of the trial, he diminishes her testimony. I think that's a Fifth Amendment due process problem, and I think that problem also will require a remand and reversal. Well, did he really diminish her testimony, or did he simply conclude that because she was in the room while he was testifying, and her testimony to him sounded like it was miming his, that he considered that as a factor? He didn't say that she had to leave. He considered her presence and the substance of her testimony as germane to the credibility of her testimony. I believe he did inject the fact that she remained in the courtroom into his analysis. But this is an issue of notice, again, I believe. And I believe if he's going to do that, then he has to give her an opportunity to leave the courtroom. So I believe he didn't give her a fair opportunity on that matter. Well, giving her the opportunity, but her testimony was really relevant, not to her own application, but rather to her husband's, hers in a sense derivatively. Her husband was represented at the time, correct? He was. So any good lawyer knows that if you have a witness in the courtroom listening to somebody else's testimony, when that second witness comes up and now testifies consistently with the first witness, that there was an opportunity to hear. I mean, we know every day that judges will say, you know, let's exclude this witness, or sometimes we'll request to exclude the witness. I mean, this is standard lawyering. So why does the IJ need to tell her, given that we've got a lawyer in the room representing her interest through her husband? Well, I'll tell you why. Because as a matter of due process, remember, Anna wasn't just a witness. She was a co-respondent. And it is a co-respondent's right, as the judge pointed out, to be in the courtroom at all times. And I think that's the issue. You're telling a co-respondent, you know, we would rather not have you in the courtroom. And I think that is something for the immigration judge to do. But your point of notice is, she could not have known, absent a warning from the judge, that he might attach some evidentiary significance to the fact that she heard the husband testify, when in fact, there's a lawyer representing her interest and her husband's interest who is perfectly capable of telling her that. I'm sure that any of the lawyers in the courtroom may have told her that. But I also believe that the lawyer would have had to have told her also that she has a right to remain in the courtroom. So what we may have found is that she may have remained in the courtroom anyway, in spite of that advice. Of course. May I move to the next topic? There are a number of failures to consider reasoned explanations in this case, in violation of cases such as Galeas v. INS and Manimbao v. Ashcroft. Remember, there was that whole flap about whether Anna was attacked by a Kalenjin or a Mungike, the Mungike being the radical Kikuyus of her tribe, the Kalenjins being the former president of Kenya's tribe. I believe this need not have been a credibility issue because the testimony was that they were Mungike-like in appearance with Kalenjin accents. And I believe this was the testimony of both the male and the female petitioners. There was the issue of the cessation of employment. The immigration judge felt that there was some problem, that the testimony was that James had been told to cease his employment in May of 2000. However, his retirement certificate was dated January of 2001. Let me ask you something, counsel. Yes. Because we find defects in the adverse credibility determination by the IJ, has your counsel, your client, set forth enough evidence of his individualized persecution that we could find past persecution of him? Your Honor, I believe that there is past persecution. What is it? Because it sounds like, when you read the record, it sounds as though he was very, very successful in terms of having this high-level government job and accepted into that government. And then I guess he gave one speech and then was told there was one threat, that he should leave the country by his attorney. And I'm just wondering if that one threat rises to the level of persecution in our case law. It wasn't just the one threat. Remember, his home was raided, and he was accused of subversive conduct. OK, they took his papers. They didn't detain him. They didn't beat him up. They didn't. Well, I argue with the immigration judge there, because I believe that a detention occurs when you're placed in a position by law enforcement where you're not free to leave. And I think his description of that CID raid amounted to a short detention. But remember, I believe that when your wife is brutally attacked. Now, what is this showing that that was either by the government or by a group that the government could not control? Well, remember, the people who did the attack made some political allegations during that attack. Remember, they said that James, the husband, had cost the country in aid. That was said. That was the testimony. That's what was said during the attack. And so it would be reasonable to infer that this was a political attack. This was by people who were inspired by the government or their proxies. May I reserve these 19 minutes of time? It's actually 16 seconds. I'm sorry, 16 seconds. I'll give you rebuttal. But let me just ask you one other question. Did the IJA actually make a finding that there was no past persecution, or did he just rest on the adverse credibility? I believe he rested on the adverse credibility if my memory serves me. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Anthony Norwood, and I'm here today representing the respondent. There was no finding of past persecution. The immigration judge rested upon the credibility factors. And the credibility factors in this case do support the immigration judge's decision. The evidence does not compel the conclusion that Mr. Murayoki was telling the truth. He worked for 30 years. He had a retirement certificate that said he was a good worker. The retirement certificate said that he retired in January 2001. He asserted that he gave a speech at Harvard, but he doesn't have any record of that speech. He claimed that his wife was attacked, and it was on the basis of the donor funds being removed. But the donor funds weren't reduced until after his wife was attacked. He claimed he was threatened and fired and was accused of treason. But then all he did was go and talk to a lawyer. And then when he went and talked to a lawyer, did he retain the lawyer? I mean, I'm now looking at his testimony. Did he say he retained the lawyer? He did retain the lawyer. So he didn't just talk to him. He paid him some money. Yes, I believe he paid him some money. But he didn't do anything else to protect himself. He didn't do anything else to protect his children. No, I think he said he moved the children into his uncle's house, into their uncle's house. He moved the children into his uncle's house a year and a half later when he decided to leave Kennew. He moved the children and left his children. Yeah, so your statement that he did nothing to protect the children is not quite right. Well, he did nothing to protect the children while he was waiting for the treason trial or for the lawyer to get back to him. That's the immigration judge's point. The immigration judge said he did not get a passport or visas for his sons. But according to his story, he goes to a politically well-connected lawyer. The lawyer says, I'll quote, pull some favors for you. And it's not until sometime later that that politically connected lawyer, again, according to his own story, I mean, I understand we've got a credibility issue as to the story. But his story is, sometime later, the lawyer says, you know, I really can't do anything for you because they've assigned us this very difficult, very hard-nosed person, and I myself am now afraid. Why was it implausible that going to a well-connected lawyer says, I'll pull some favors for you? He says, OK, until I hear something else, I guess it's in the hands of my lawyer, and I'll wait till I get more information. Then when he gets more information, he says, I think I may now be in real trouble. Well, the immigration judge thinks that point lacks credibility, that he would not do anything for you. But why does that lack credibility? Because that doesn't sound to me like a totally implausible story. It lacks credibility because he doesn't take any other actions to protect himself, or his wife, or his children. But he did. He left. I mean, you know, he tried to go through the legal system, or the kind of corrupt legal system that existed there. And then when he learned that this lawyer couldn't use his connections to help him, that they were going to investigate him for treason. And this is against the backdrop of some pretty serious corruption, and police squads, military squads, and people. I mean, if you look at the State Department reports, and there's a lot going on. So he finds out his lawyer can't help him, and then he leaves. He comes here, because he realizes he's at the end of his rope. I guess, I think that IJ speculated quite a bit on this, and asked for corroboration when it really wasn't his pre-real ID, when it really wasn't required. What I don't understand is why he didn't get to the persecution. Because I'm not sure that this case rises, even if you believe everything, rises to the level, the type of persecution that we typically grant asylum for. I agree that I don't think there's past persecution in this case. I think it's the theory of the case that American asylum law should trump Kenyan national law. And if he's accused of treason in Kenya, that he should get protection in the United States. That's not a persecution question, as I understand it. I mean, what I think, well, what I'm after on the question of persecution is how bad was his treatment, not whether something trumps Kenyan law. But I share Judge Wardlaw's hesitation that even taking all of his story as true, I'm not yet convinced that the treatment was so bad as to be persecution. I would agree with you. I understand where you're going. He lived well. You're saying this, according to Kenyan law, he committed a criminal act. So it was just prosecution of Kenyan criminal laws. It wasn't persecution. I could understand that defense, but we didn't get there in this case, which is what's problematic to me. And I guess what I would be inclined to do is to remand, to reverse the adverse credibility and remand to the BIA to look at the question of past persecution. Well, Your Honor, I would again argue that the evidence does not compel the conclusion that Petitioner was telling the truth and that the credibility decisions should be upheld. If I may go to the next question. I'm sorry. I know you're headed for the wife, but if I can detain you for just a moment. Give it a couple minutes. There's a question I have about our own circuit law, and that is, if we were to find that we're going to reverse the adverse credibility finding, does the government get a second chance, or do we just deem the person credible and that's the end of it? It would be remanded to the Board of Immigration Appeals, and the board would take a new look at it. And if they thought that there should be more evidence or something else, they could send it back to the immigration judge. But it would be in the lap of the jurisdiction of the board to decide. Judge Fletcher asked an interesting question, because there have been some recent cases and some discussion in cases about whether you remand on an open record, or whether you remand for the BIA to make the remaining findings, accepting the petitioner's testimony is true. I've been seeing some different, you have too, right? I've seen different decisions. And I'm not sure what the rationale is for when we do one and when we do the other. I think it's up to the court, Your Honor, and it's what some judges, some panels have done. I would argue that it's appropriate for the BIA to look at everything anew. Get new briefs, and if they want more evidence, send it back to the immigration judge. I can see how you can test it. If we were to say the adverse credibility finding insufficiently supported on this record, given that my difficulties would be, well, he wasn't, there's certain explanations that weren't followed out to their end, and so on. I would view it, I think, probably as unfair to prevent the government from coming in with more evidence, depending on what the explanations are as you pursue them, and so on. OK, now, I'm sorry, I detained you. You were headed for the spouse. The motion to reopen, the board properly denied the motion to reopen because there's no new or previously unavailable evidence. That's clear that what happened to her happened in infancy. Yeah, but what about the change law point? Well, the change law point is the petitioner argues that Muhammad, an ineffective assistance of counsel claim. I'm not talking about ineffective assistance of counsel claim. I'm talking about our change of law with respect to a past and completed female genital mutilation. Well, the reason the board picked up on ineffective assistance of counsel is that Muhammad is not a merits case. It's an ineffective assistance of counsel. It was both. It said the lawyer was ineffective for not realizing that FDM is an ongoing persecution. I mean, and then in hell, that's this ongoing persecution. So whether or not the lawyers, and it's the first case to hold that. So whether or not the lawyer's ineffective, the law changed. It's a finding of prejudice under the ineffective assistance of counsel. It's not a necessarily finding of past persecution. She hasn't, the persecution hasn't been established yet. Now, as I submitted in a 28-J letter, this court has found that it does not create an irrebuttable presumption. Go with me in terms of the assumption. You don't have to agree. But just let's assume that Muhammad does change our case law with respect to the consequence of a prior and completed FDM. Does change of law via case law constitute change of law within the meaning of the statute? No, Your Honor. And why do you say that? Because this court interprets the law. This court doesn't introduce the law. That's up to Congress to change the law. This court is telling us. So we're just calling balls and strikes. This court is telling us what the law has always been. Yeah, that's fantasy land, of course. We know that. I mean, judges do interpret the law, or even under statutory provisions, the law has changed. The Supreme Court talks about it this way. I mean, there's this legal fiction that the common law courts have always had, that you read the case law, this is what comes up. But of course, we all know the common law courts change the law. So go with me to the point that, in fact, case law does change the law sometimes. You don't want to say that? I can see that. I can go that far. But I don't think that Muhammad is a change in even the case law. I mean, there's been FGM cases well before Muhammad. Muhammad is an ineffective assistant to counsel. But a lot of people didn't recognize before Muhammad that, I mean, most of the cases are people who feared having the procedure. They were not claiming continuing persecution on the basis of the procedure. And that's where Muhammad kind of worked to see change. I think the commentators and people who have read the case recognize that. The outside bloggers and the outside world gets that. And so the thing, OK, so you have a, the INS has a reg that interprets what changed circumstances is that would relieve you of the one-year time bar. And it lists several things. But it does say they may include but are not limited to. So it seems as though there is room if the BIA wished to interpret its own regulation in this way to say a clear change in the law would be a changed circumstance. I mean, there is, that would be a reasonable interpretation. There might be other reasonable interpretations. I would agree that that could be a reasonable interpretation. Is there no further questions? One practical question. If we were to remand, grant and remand with respect to the husband on credibility and then was there persecution and so on, so that that proceeding is ongoing, and if we were to hold that it's possible that change of case law is change of law with respect to the one-year deadline and so on, so both cases go back, what are the practical consequences to how these cases will be handled? Let's assume, for example, that after the IJ and the BIA finish with the husband, they conclude, again, that he's incredible. Or they conclude that he is credible, but it doesn't rise to the level of persecution, so he loses. Is he entitled then, even after having lost on this point, to be derivative on his wife's application? I would think that he would. If the board reopened and allowed her to file an asylum application and it went to the immigration judge, he could be a derivative on her asylum. And in this case, they have family here? Is this one of the kids? We've got a lot of the immigration judges. Their daughter is here and was here at the time, studying in Boston, and three of his sons were in Kenya in school and taking care of his property. We don't know exactly what the sons are doing. Thank you. Thank you very much, counsel. Brief rebuttal, if I may? I'll give you a minute. Your Honors, I would urge the court also to look at the well-founded fear of future persecution. Because I do believe that there is record enough to find such a well-founded fear. Remember that the triggering event that the farm But the agency hasn't reached the question, right? On the well-founded fear. Right. I believe that they have not. Well, OK. And there are a couple of other things. In the retirement issue, the retirement certificate issue, the court failed to consider the explanations. Remember the window dressing explanation given by the mail petitioner about the lag between when he was told to cease his employment to the date of retirement? The donor representatives would ask for him. He was a guy that was sought after by them. And so it would have been reasonable that the government may have kept the appearance that he was still on with them. All right, counsel. You're over your time. Thank you, Your Honor. Thank you. All right. Murieke versus Helder is submitted.
judges: Lynn, Wardlaw, Fletcher W.